**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
KM ENTERPRISES, INC.,
d/b/a EMTRAC SYSTEMS,

               Plaintiff,

        -against-

JOAN MCDONALD, in her capacity as
Commissioner of the NEW YORK STATE
DEPARTMENT OF TRANSPORTATION,

               Defendant.
--------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
11-cv-5098 (ADS)(ETB)

**APPEARANCES:**

**Jana Yocom, P.C.**
*Attorneys for the Plaintiff*
320 South 11th
Suite 1
Mt. Vernon, IL 62864
       By:    Jana L. Yocom, Esq., of Counsel

**New York State Attorney General, Nassau Regional Office**
*Attorneys for the Defendant*
200 Old County Road, Suite 240
Mineola, NY 11501
       By:    Assistant Attorney General Ralph Pernick

**New York State Attorney General, Syracuse Regional Office**
*Attorneys for the Defendant*
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455
       By:    Assistant Attorney General Timothy P. Mulvey

**SPATT, District Judge.**

The Plaintiff in this case, KM Enterprises, Inc. (the "Plaintiff" or "KME"), filed a

complaint against the Defendant, Joan McDonald, in her capacity as Commissioner of the New

York State Department of Transportation (the "Defendant" or "Commissioner"), along with a

1

motion for a preliminary injunction in the Northern District of New York on October 5, 2011. The action was subsequently transferred to this district on October 20, 2011. In short, this is a case about a public procurement contract solicited by the Town of Brookhaven (the "Town") for a project to install traffic preemption equipment. The Plaintiff KME was one of two competing subcontractors (the other being Global Traffic Technologies ("GTT")), whose price quote was ultimately not accepted by the prime contractor, Hinck Electrical Contractor, Inc. ("Hinck"), although KME is of the belief that it submitted the lowest price quote.

Presently before the Court is the Defendant's motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion is granted on both grounds and the action is dismissed with prejudice.

## I.    BACKGROUND

### A.  Factual Background

This action arises out of a public procurement contract solicited by the Town, under the authority of the New York State Department of Transportation ("NYSDOT") for a traffic project known as "Town of Brookhaven, Traffic Preemption Control System Pin No. 1757.43, Invitation to Bid #11039" (the "Project"). (1st Am. Compl. ¶ 4.) The Project consists of installing traffic preemption equipment, which changes red lights to green, at more than four hundred intersections in the Town, in order to allow emergency vehicles to travel through the intersections. (1st Am. Compl. ¶ 27.) Four prime contractors bid on the job, including Hinck, which was ultimately awarded the contract. (1st Am. Compl. ¶ 28.)

Prior to bidding on the Project, Hinck solicited price quotes from traffic preemption equipment vendors to factor into its bid to the Town. Two competing manufacturers of traffic

preemption equipment — the Plaintiff KME, whose equipment is known as the Emtrac Systems, and GTT, whose product is called Opticom GPS — submitted price quotes. (1st Am. Compl. ¶¶ 27, 30.) The project bid date was June 2, 2011. (1st Am. Compl. ¶ 45.) On June 1, 2011, KME provided Hinck with a price quote of $1,526,250 for the traffic preemption equipment. KME submitted this same price quote to the three other vendors who were also bidding on the project but who were ultimately unsuccessful. (1st Am. Compl. ¶ 44.) According to the Plaintiff, GTT's price quote was higher, because it submitted a price quote of $2,688,242.50.

The Amended Complaint states that after the bid opening, the Plaintiff inquired whether the prime contractors had used KME's price quote in their bids to the Town. KME claims that all three contractors, except Hinck, notified KME that their bid was considerably lower than the competition. (1st Am. Compl. ¶ 46–47.) The Plaintiff also alleges that Kris Morgan, President of KME, spoke with Paul Stram of Hinck and was told that KME was the low bidder. (1st Am. Compl. ¶ 49.) Based upon those communications, KME was of the belief that it had submitted the lowest price quote for the equipment supply contract as to all four prime contractors.

However, KME asserts that Morgan was contacted by Stram by telephone on August 4, 2011, and was told that the Town had instructed Hinck to order the equipment for the Project from GTT. Thus, according to the allegations in the Amended Complaint, there was no competitive bidding with regard to the equipment vendors, because Hinck was directed to use the product associated with the higher bid.

After Hinck's bid for the Project was accepted, it awarded the equipment supply contract to GTT. Other than Stram's alleged statement to Morgan, there are no other factual allegations regarding the Town's involvement in Hinck's decision to award the equipment supply contract to GTT.

The Plaintiff's lawsuit is premised on an alleged lack of compliance with federal law and regulations.  In particular, it alleges that the Federal Highway Administration, in compliance with 23 C.F.R 635.411, required competitive bidding for the Project, and thus federal funding of the Project was conditioned upon proper application of this process.  However, according to the Plaintiff, when the Town directed Hinck to order the equipment from GTT although KME was the lowest bidder, it effectuated what was practically sole source procurement rather than competitive bidding, which is not permitted under federal law.  A sole source procurement is "a noncompetitive procurement, i.e., a procurement under which the Government does not seek or consider bids or offers from other than the designated source." Labat-Anderson, Inc. v. U.S., 42 Fed. Cl. 806, 848 (Fed. Cl. 1999).  The Plaintiff makes allegations of this nature throughout the Amended Complaint.  (See 1st Am. Compl. ¶ 57 ("Thus federal funding of the project was conditioned upon proper application of the competitive bidding regulations applicable to use of Federal Aid Highway Act funds . . . In other words, as KME was the low bidder, [the Town] may not nevertheless direct that the contractor order GTT equipment, ignoring the condition placed upon the use of federal funds by the Federal Highway Administration."); see also id. ¶ 4 ("Plaintiff KME . . . alleges that it is entitled under federal law to an award of the contract, that the award has been improperly thwarted by the Town . . . under the authority of NYSDOT such that KME has been deprived of a right based on a statutory violation of federal law in addition to a liberty interest in certainty in application of appropriate law."); id. ¶¶ 35-36 ("NYSDOT by its agent, Brookhaven, has caused or controlled the wrongful rejection of KME as the subcontractor. NYSDOT, by its agent Brookhaven, acted in bad faith and/or fraud in the approval of the competing subcontractor.").)

**B. Procedural Background**

On November 30, 2011, the Plaintiff filed an Amended Complaint, asserting causes of action for a declaratory judgment, an injunction, as well as a cause of action pursuant to 42 U.S.C. § 1983. On December 30, 2011, the Defendant filed the present motion to dismiss for a lack of subject matter jurisdiction and for a failure to state a claim.

While this motion was pending, the Court addressed the Plaintiff's motion for a preliminary injunction. Specifically, the Plaintiff sought to enjoin the Defendant (1) from disbursing federal funds during the pendency of this action for the Project; and (2) from authorizing further performance of the contract for the Project during the pendency of this action. This Court referred the matter to United States Magistrate Judge E. Thomas Boyle for the purpose of holding a hearing and issuing a Report and Recommendation addressing the Plaintiff's order to show cause and motion for a preliminary injunction.

Following a hearing, Judge Boyle issued a Report and Recommendation on January 5, 2012, which made the following findings: (1) that the Plaintiff failed entirely to demonstrate any irreparable harm in this action because the alleged injury could be adequately compensated by money damages; and (2) that the Plaintiff failed to demonstrate a likelihood of success on the merits because nothing in the evidence or testimony supported the allegation that the Town interfered with the award of the equipment supply contract to GTT. After carefully reviewing the Plaintiff's objections, on February 16, 2012, this Court adopted the Report and Recommendation in its entirety and denied the Plaintiff's request for a preliminary injunction.

## II.   DISCUSSION

### A. <u>Statutory Scheme and the Plaintiff's Allegations</u>

Upon an examination of the Amended Complaint, the Court finds it difficult to decipher the Plaintiff's allegations. Namely, it is not entirely clear what injury the Plaintiff is alleging it suffered and what relief the Plaintiff is seeking.

Therefore, a useful starting point for the Court's analysis is the federal statute that forms the core of the action. The Federal Aid Highway Act ("FAHA") establishes certain requirements when federal monies are used for state and local highway improvements. This statute provides, in part, that a contract for a federal-aid highway project undertaken by a state or local government generally shall be awarded as a result of competitive bidding to the lowest responsive bid. 23 U.S.C.A. § 112(b)(1). The FAHA further provides that the state or local government may not enter into a contract awarded as a result of competitive bidding "without the prior concurrence of the Secretary [of Transportation] in the award thereof." 23 U.S.C.A. § 112(d).

Corresponding federal regulations illuminate the requirement of competitive bidding contained in the Code. 23 C.F.R. § 635.411 provides that:

> [f]ederal funds shall not participate, directly or indirectly, in payment for any premium or royalty on any patented or proprietary material, specification, or process specifically set forth in the plans and specifications for a project, unless:
>
> (1) Such patented or proprietary item is purchased or obtained through competitive bidding with equally suitable unpatented items; or
>
> (2) The State transportation department certifies either that such patented or proprietary item is essential for synchronization with existing highway facilities, or that no equally suitable alternate exists; or
>
> (3) Such patented or proprietary item is used for research or for a distinctive type of construction on relatively short sections of road for experimental purposes.

23 C.F.R. § 635.411.

There is no question that the Project at issue in this case is an Intelligent Transportation System ("ITS"), which is an "application[] of information processing, communications, control, and electronics to improve the efficiency and/or safety of a transportation system such as a highway", <u>see</u> Conservation Law Foundation v. Fed. Highway Admin., 630. F. Supp. 2d 183, 205 n.25 (D. N.H. 2007); that the Project is regulated by federal law; and that it is administered under the direction of the Defendant DOT.

The Plaintiff alleges that the Town instructed Hinck to order the equipment for the Project from GTT, even though KME had the lowest bid. In fact, the entire case stems from this allegation. From this basis, the Plaintiff contends that: (1) the DOT and/or the Town and/or Hinck (the Plaintiff refers to these entities as "the Defendant and her agents") effectively engaged in sole source procurement in violation of 23 C.F.R. § 635.411 (1st Am. Compl. ¶ 55); and (2) the Defendant and her agents did not comply with the competitive bidding requirements in 23 C.F.R. 635.411 (1st Am. Compl. ¶ 56.) Based upon these allegations, it appears that the Plaintiff's lawsuit is premised on the theory that under this federal regulation, competitive bidding was required as between it and GTT, and that this regulation was not complied with in connection with the Project, in accordance with the Defendant's policy and practice.

However, other statements in the Amended Complaint appear to allege something quite distinct from the contentions just described. For instance, the Amended Complaint also states that there is a "lack of clarity as to applicability of regulations promulgated pursuant to Title 23". (1st Am. Compl. ¶ 23.) In addition, the declaratory relief that the

Plaintiff is requesting is for this Court to clarify the scope and applicability of competitive bidding regulations. Thus, it appears that the Plaintiff's theory of the case may also be premised on the claimed lack of clarity in 23 C.F.R. § 635.411, specifically, as to whether the competitive bidding requirements described in that regulation would apply to KME as a subcontractor or equipment vendor in the future.

The Court will therefore proceed to address the merits of the Defendant's motion to dismiss, keeping in mind the two distinct theories of the case that the Plaintiff references and conflates in the Amended Complaint.

**B.  Legal Standards**

**1.  Lack of Subject Matter Jurisdiction**

The Defendant raises several arguments as to why the Plaintiff's amended complaint should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). In particular, the Defendant argues that it is entitled to sovereign immunity so that the case cannot proceed, and that in the alternative, the Plaintiff lacks standing to sue the Defendant.

Federal district courts are courts of limited jurisdiction, and, at all times, are obligated to be assured of their subject matter jurisdiction over matters before them.  See, e.g., Durant, Nichols, Houston, Hodgson & Cortese–Costa P.C. v. Dupont, 565 F.3d 56, 62–63 (2d Cir. 2009). In deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court generally accepts the alleged facts as true, although when necessary to resolve a factual dispute, may consider evidentiary submissions outside of the pleadings.  See Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000).  The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, which is set forth below except that "[a] plaintiff

asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id.

### 2. Failure to State a Claim

The Defendant also seeks to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6).

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context—specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiffs' favor. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists

Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007).  Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993).  The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

## C.  **Sovereign Immunity**

As an initial matter, the only defendant in this action is a public official being sued in her official capacity.  Therefore, the Defendant in the present case is deemed to be a state agency. See Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . the real party in interest is the entity."); see also Monell v. New York City Dep't. of Social Services, 436 U.S. 658, 690, n.55, 98 S. Ct. 2018, 2035, n.55, 56 L. Ed. 2d 611 (1978) (noting that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."); Reynolds v. Guiliani, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the governmental entity itself."). While a suit against a government official in his or her individual capacity seeks to impose liability upon the defendant personally, see, e.g., Shabazz v. Coughlin, 852 F.2d 697, 700 (2d Cir. 1988), and in some instances it may not be clear in which capacity an action may lie, see, e.g., Oliver Schools, Inc. v. Foley, 930 F.2d 248, 252 (2d Cir. 1991), this is not such a case.  The Amended Complaint is brought against "Joan McDonalds, in her capacity as Commissioner New

York State Department of Transportation", and the allegations make clear that this is a suit against her in her official capacity.

Generally, the Eleventh Amendment "bar[s] federal suits against state governments by a state's own citizens." Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (citing Hans v. Louisiana, 134 U.S. 1, 13, 10 S. Ct. 504, 33 L. Ed. 842 (1890)); see Dube v. State Univ. of N.Y., 900 F.2d 587, 594–95 (2d Cir. 1990) (holding that the Eleventh Amendment precludes an action under Section 1983 against SUNY, an integral part of the State of New York); see also Garcia v. SUNY Health Sci. Ctr. at Brooklyn, No. 97 Civ. 4189, 2000 WL 1469551, at *4 (E.D.N.Y. Aug. 21, 2000) (dismissing Section 1983 claim against state agent under the Eleventh Amendment). "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." Kentucky, 473 U.S. at 169, 105 S. Ct. at 3107. As explicitly held by the Supreme Court, "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." Id. at 163, 105 S. Ct. at 3106.

"The Eleventh Amendment bars claims that seek either monetary damages or retroactive injunctive relief." Rothenberg v. Stone, 234 F. Supp. 2d 217, 221 (E.D.N.Y. 2002). "However, prospective injunctive relief is available against a state officer in his official capacity under the doctrine of Ex Parte Young, 209 U.S. 123, 155–56, 28 S. Ct. 441, 52 L. Ed. 714 (1908)." Id. The Supreme Court has recently explained the reasoning behind the legal fiction of Ex Parte Young as:

> rest[ing] on the premise—less delicately called a fiction—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he [or she] is not the State for sovereign-immunity purposes. The

doctrine is limited to that precise situation, and does not apply when the state is the real, substantial party in interest.

VA Office for Protection and Advocacy v. Stewart, 563 U.S. — , 131 S. Ct. 1632, 1638, 179 L. Ed. 2d 675 (2011) (citations and quotation marks omitted).

This principle is narrowly applied only to prospective injunctive relief and the exception to sovereign immunity does not apply to claims for retrospective relief. Ward v. Thomas, 207 F.3d 114, 119 (2d Cir. 2000); Diblasio v. Novelle, No. 01 Civ. 4498, 2002 WL 31190139, at *8, 2002 U.S. Dist. LEXIS 18424, at *27 (S.D.N.Y. Sept. 27, 2002) (overruled on alternate grounds). Consequently, the Supreme Court has held that the Eleventh Amendment and the principles governing the issuance of declaratory judgments prohibit the award of a declaration that state officials' prior conduct violated federal law. Green v. Mansour, 474 U.S. 64, 65–66, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985).

> Thus, in such suits, the Eleventh Amendment prohibits the award of injunctive relief, Henrietta D. v. Bloomberg, 331 F.3d 261, 287–88 (2d Cir. 2003), compensatory relief, Ward, 207 F.3d at 119, and declaratory or "notice" relief against state officials "where there is no continuing violation [of a federal right] to enjoin," Marbley v. Bane, 57 F.3d 224, 232 (2d Cir. 1995), abrogated on other grounds by Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res., 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001). See, e.g., Green v. Mansour, 474 U.S. 64, 71, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985). Thus, absent a continuing violation of federal law by the state, claims for injunctive, compensatory, or declaratory relief against state officials must be dismissed.

Boyland v. Wing, 487 F. Supp. 2d 161, 180 (E.D.N.Y. 2007).

Therefore, there are specific elements that the Amended Complaint must satisfy in order to properly avoid the sovereign immunity bar. To determine whether the doctrine of Ex parte Young applies, a federal court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective." Verizon Maryland, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 122

S. Ct. 1753, 152 L. Ed. 2d 871 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S.

261, 296, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997)); see In re Deposit Ins. Agency, 482 F.3d

612, 618 (2d Cir. 2007) ("A plaintiff may avoid the Eleventh Amendment bar to suit and proceed

against individual state officers, as opposed to the state, in their official capacities, provided that

his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly

characterized as prospective.'" ) (citation omitted); Tigrett v. Cooper, No. 10 Civ. 2724, 2012

WL 691892, at *6 (W.D. Tenn. March 2, 2012) ("for a court to grant an exception to sovereign

immunity declaratory relief under Ex Parte Young, it must take care to ensure that the

declaratory relief satisfies both of the requirements articulated in Supreme Court jurisprudence.

That is, the declaratory relief must both address an ongoing violation of federal law and be

prospective in nature."); Boyland, 487 F. Supp. 2d at 180 ("in the absence of a continuing

violation of federal law, the Eleventh Amendment bars a federal court from awarding such

declaratory and notice relief against a state defendant based on the state's past unlawful

conduct."). If a complaint is based entirely upon past acts and does not allege continuing

conduct that, if stopped, would provide a remedy to a plaintiff, then it does not implicate Ex

parte Young.

    Here, the Defendant alleges that KME makes only conclusory allegations of a violation

of a federal law and that the Amended Complaint makes no factual allegations. More

importantly, the Defendant argues that KME has failed to allege that the Commissioner is

engaged in an ongoing violation of federal law with respect to KME.

    Although at times it is difficult to discern the Plaintiff's allegations, it appears that it does

state a claim for relief that is properly characterized as prospective, in that it seeks the

Commissioner's future compliance with governing law and regulations. However, what is lacking from the Amended Complaint is any allegation regarding "an *ongoing* violation of federal law". See Green v. Mansour, 474 U.S. 64, 73 & n. 2, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) (emphasis added) (finding declaratory judgment improper where there is no continuing violation of federal law); see also Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749 (7th Cir. 1987) (finding declaratory judgment improper where it would serve no useful purpose).

Certainly, the majority of the Plaintiff's contentions—in fact, the entire impetus underlying the present action—concern the previous award of the subcontract to GTT rather than KME. The Plaintiff alleges that federal law was formerly violated when the Town, under the authority of the Commissioner, improperly thwarted the award of the relevant subcontract and effected what was practically sole source procurement. KME specifically alleges that: (1) "NYSDOT by its agent, [the Town], has caused or controlled the wrongful rejection of KME as the subcontractor." (1st Am. Compl. ¶ 35); (2) "NYSDOT, by its agent Brookhaven, acted in bad faith and/or fraud in the approval of the competing subcontractor." (1st Am. Compl. ¶ 36); (3) "Defendant and her agents ignored requirements imposed by federal law in awarding the contract to GTT. This is tantamount to a sole source procurement in violation of 23 C.F.R. §635.101 *et seq.* and 23 C.F.R. §635.411, in particular. In addition to the fact that sole source determination was expressly prohibited in this case by the Federal Highway Administration, proper procedures required for sole source procurement were not followed." (1st Am. Compl. ¶ 55).

Assuming that these allegations state a claim for relief, they nevertheless plainly state a past, not a continuing, violation of federal law. See Wilson v. Edmond, No. 10 Civ. 659, 2011

WL 494777, at *9 (D. Conn. Feb. 5, 2011) ("any violation of his constitutional rights during his initial bar application process cannot be considered to be "ongoing" for <u>Ex Parte Young</u> purposes. . . . despite Wilson's conclusory assertions to the contrary, he has not alleged claims seeking relief that may properly characterized as prospective rather than retrospective.). In this regard, under "Count 1, Declaratory Judgment", it states that an actual controversy exists because the Defendant has *failed* to comply with applicable Federal law, and a controversy exists as to the role of the Defendant with regard to the administration and oversight of Federal Aid projects in that it has *failed* to comply with applicable Federal law. Both of these allegations are plainly in the past tense. <u>See O'Shea v. Littleton</u>, 414 U.S. 488, 495–96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ("past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present, adverse effects," ).

Thus, it is reasonable to find that the relief the Plaintiff is seeking is merely a retroactive attempt to reverse the outcome of the decision to use its competitor's product for the Project. This is unmistakably barred by the Eleventh Amendment. <u>See Bd. of Educ. v. Schulz</u>, 290 F.3d 476, 480 (2d Cir. 2002) ("retrospective relief [is] precluded by the Eleventh Amendment); <u>see also Creusere v. Weaver</u>, No. 07 Civ. 5859, 2009 WL 170667, at *5 (6th Cir. Jan. 26, 2009) ("Since Creusere is merely seeking to relitigate retrospective harms rather than to prevent prospective violations of federal law, his request for injunctive relief does not fit within the <u>Ex parte Young</u> exception to Eleventh Amendment immunity and is therefore barred by the Eleventh Amendment.").

As a result, before this action can proceed against the Commissioner, the Plaintiff "must identify the federal constitutional or statutory law the Commissioner threatens to violate."

Farricielli v. Holbrook, 215 F.3d 241, 245 (2d Cir. 2000). In the Amended Complaint, the potential ongoing violation of federal law is phrased as follows:

> The lack of clarity as to applicability of regulations promulgated pursuant to Title 23 related specifically to highways as well as the absence of remedy for irregularities in bidding procedures lead to a policy or custom on the part of Defendant and her agents by which New York procurement law, which takes into consideration factors in addition to low price, is applied.
>
> In the alternative, said lack of clarity gives rise to a policy or custom on the part of Defendant and her agents by which federal regulations are ignored.

Accordingly, one possibility of the supposed ongoing violation of federal law is that the Commissioner ignored certain regulations under Title 23 that she should possibly be applying, and that she will consequently violate the same federal regulations in the future. Cf. Harris v. Queens Cnty. Dist. Attorney's Office, No. 08 Civ. 1703, 2009 WL 3805457, at *4 (E.D.N.Y. Nov. 9, 2009) (finding that the plaintiff had alleged an ongoing violation of federal law because she claimed that a security alert would be activated whenever she entered the Queens Criminal Courthouse and thus sought relief to prevent any future detentions). In this regard, the Plaintiff requests prospective injunctive relief that the DOT—through the Commissioner—act in the future to comply with federal law.

Nevertheless, even assuming that the State did not comply with certain federal regulations in the past, there is no allegation beyond the vague legal conclusion of a "policy or custom" that the State continues to violate these regulations. See Harris, 572 F.3d at 72 ("although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions'") (quoting Iqbal, 129 S. Ct. at 1949). The Amended Complaint is devoid of any allegation of an ongoing violation. See S & M Brands, Inc. v. Cooper, 527 F.3d 500, 510 (6th Cir. 2008); Hernandez v. Dormer, No. 09 Civ. 5549, 2011 WL

817414, at \*9 (E.D.N.Y. Feb. 25, 2011) ("Since plaintiff's claim seeking a declaratory judgment is not based upon a 'claimed continuing violation of federal law,' . . . by the State defendants, his declaratory judgment claim against the State defendants is retroactive in nature and, thus, barred by the Eleventh Amendment." (quoting <u>Ward</u>, 207 F.3d at 120)); <u>see also</u> <u>Ward v. Thomas</u>, 207 F.3d 114, 120 (2d Cir. 2000) ("Any declaration could say no more than that Connecticut had violated federal law in the past."); <u>Springfield Hosp. v. Hoffman</u>, No. 09 Civ. 254, 2010 WL 3322716, at \*7 (D. Vt. Apr. 9, 2010) ("the relief requested in ¶ B of the Complaint is retroactive, as it seeks a declaration concerning the Defendants' past violation of the statutes and regulations at issue in this case).

Rather, the real essence of the Plaintiff's dispute is found in paragraph 55 of the Amended Complaint, where it states that "Defendant and her agents ignored requirements imposed by federal law in awarding the contract to GTT. This is tantamount to a sole source procedure in violation of 23 C.F.R. S 635.101 *et seq.* and 23 C.F.R. S 535.411, in particular." (First Am. Compl. ¶ 55.) While in its opposition, the Plaintiff attempts to argue that its allegations are prospective, the Complaint is undoubtedly retrospective in nature. The only forward looking notion in the Amended Complaint is the desire to not have federal regulations ignored again in the future. While this certainly requests relief that would be implemented in the future, it does not fulfill the other requirement of a continual and ongoing violation. <u>See Prisco v. State of New York</u>, No. 91 Civ. 3990, 1995 WL 693251, at \*5 (S.D.N.Y. Nov. 22, 1995) ("Here, plaintiff has made no allegation of any continuing violation. Her accusations of misbehavior by state actors involve only past events . . . Although she claims that her allegations against the state involve continuing violations because of the present condition of the land, she makes no claims that state officers are presently acting or will act in the future to violate her

rights."). Cf. Fishman v. Daines, 743 F. Supp. 2d 127, 138 (E.D.N.Y. 2010) (finding that the plaintiffs had passed the sovereign immunity bar because they were "alleging that the challenged policies, which are still in effect, violate federal law"); Reynolds v. Giuliani, 118 F. Supp. 2d 352, 381–82 (S.D.N.Y. 2000) (finding "[p]laintiffs' claims . . . [fell] squarely within the Ex Parte Young exception" in part because the Plaintiffs "allege that the state officials are violating and continue to violate federal laws, . . . " (footnotes and internal citations omitted)).

The Plaintiff has not presented, and the Court has not uncovered, any precedent to support the idea that allegations similar to those contained in the instant Amended Complaint would be sufficient to pass the Ex Parte Young bar. Certainly, the requirement of an ongoing and continuous violation of federal law need not mean that the Commissioner be in the midst of a current misapplication of federal law against the particular plaintiff initiating the suit. Such a decree would essentially render Ex Parte Young a nullity. Rather, the ongoing and continuous requirement distinguishes cases where the relief sought is prospective in nature, *i.e.*, designed to prevent injury that will occur in the future, and cases where relief is retrospective. See Coeur d'Alene, 521 U.S. at 281, 117 S. Ct. 2028 ("An allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the Young fiction."). "Thus, where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied." Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1337 (11 Cir. 1999).

However, here there is also no allegations of a threat of enforcement in the future. Even with the prospective relief that the Plaintiff is seeking, it must assert a likelihood that it will be subjected to a similar violation in the future. See White v. Livingston, No. 08 Civ. 2413, 2009 WL 2900771, at *6 (S.D. Tex. Sept. 3, 2009) ("When a plaintiff 'allege[s] only a single, past

statutory violation and does not assert any likelihood that he will be subjected to a similar violation in the future,' he does not have standing to seek the prospective relief allowed under Ex parte Young.") (quoting Armstrong v. Turner Indus., Inc., 141 F.3d 554, 563 (5th Cir. 1998)); see also Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1140 (9th Cir. 2000) (en banc) (refusing to find a credible threat of injury where there was "no specific threat or even hint of future enforcement or prosecution"); see also Cardenas v. Anzai, 311 F.3d 929, 936 (9th Cir. 2002) ("[W]hen there is no ongoing violation, 'the issuance of a declaratory judgment . . . would have much the same effect as a full-fledged award of damages or restitution' and is barred." (quoting Green v. Mansour, 474 U.S. 64, 73, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1986))).

While in its opposition papers the Plaintiff claims that KME will bid on these types of projects involving the Commissioner in the future, so that the regulations at issue might apply to its future endeavors, it makes no such allegation in the Amended Complaint. Thus, there is no allegation of any likelihood that it will be subjected to a similar violation in the future.

As a second potential avenue to overcome the Ex parte Young bar, the Plaintiff appears to indicate an alternative relief theory. In this regard, it alleges not that there has been a past violation of federal law and that the applicable regulations may be ignored in the future, but rather that there is a general uncertainty as to the law's applicability in the future. Thus, another possible ongoing violation is the pending "uncertainty" as to whether this law is applicable to the Plaintiff's business. The Court draws this inference from the Plaintiff's passing reference to a "lack of clarity". In this regard, it alleges that: (1) there is a "lack of clarity as to applicability of regulations promulgated pursuant to Title 23 related specifically to highways . . ." (1st Am. Compl. ¶ 23); and that (2) "[i]mmediate and irreparable harm will result if Commissioner is not enjoined from participating in authorizing improper performance of federally approved projects

in that liberty interests in certainty as to the lawfully applicable process for award of contracts obligated in compliance with federal regulations and free from anticompetitive goals and free from improper proprietary appropriation will not be possible." (1st Am. Compl. ¶ 70). (See also Pl. Opp. at 7 ("Custom in the industry is that competitive bidding regulations apply. If the procurement of costly safety equipment is a free for-all as Defendant suggests, declaration in that regard is needed so that KME may govern its business accordingly.").) Thus, viewing the Amended Complaint through the lens of this alternative theory, the only type of ongoing federal violation that the Court can make out is that the Town's actions regarding the past solicitation—allegedly as an agent of the Defendant State agency—have resulted in an ongoing uncertainty regarding the application of federal law.

However, even if the Plaintiff were to allege that certain federal laws or regulations were vague or ambiguous—which it does not expressly state—the Court also finds this to be insufficient to pass the sovereign immunity bar. See Makas v. State of New York, No. 05 Civ. 1564, 2007 WL 2455053, at *1 (N.D.N.Y. Aug. 23, 2007) (finding that the plaintiff's claim that New York Criminal Procedure Law § 220.15 was unconstitutional because it was vague and violative of equal protection was insufficient to state a valid claim in light of Ex Parte Young, because he did not identify an ongoing violation of federal law which would be remedied by the court's issuance of an injunction).

It is crucial to note that the Plaintiff does not allege that the law or corresponding regulations at issue are unconstitutional or otherwise invalid. See Children's Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1412, 1416 (6th Cir. 1996) (finding Eleventh Amendment immunity applicable because the plaintiffs were not seeking to "enjoin the enforcement of an allegedly unconstitutional statute"). Cf. Burns v. Alexander, 776 F. Supp. 2d 57, 74 (W.D. Pa.

2011) (determining that the amended complaint did state an ongoing violation of federal law because "[a]s the language in Young makes clear, the continued enforcement and application of an unconstitutional state statute is itself an ongoing violation of federal law"); Ernst v. Rising, 427 F.3d 351, 380 (6th Cir. 2005) ("Plaintiffs here allege a present and ongoing violation of the Equal Protection Clause. The injunctive relief sought by Plaintiffs to remedy the disparity in the contributions of, and disbursements to, 36th District judges and non-36th District judges is purely prospective, and would therefore ensure future compliance with the federal constitution."). Seeking legal clarification from the federal courts as to the applicability of a federal regulation also raises significant concerns regarding advisory opinions and the Court's proper role. "[C]larification or interpretation [c]ould amount to nothing more than an unconstitutional advisory opinion, and the judiciary may not provide advisory opinions." Rochester-Genesee Regional Transp. Auth. v. Hynes-Cherin, No. 07 Civ. 6378, 2008 WL 4906249, at *22 (W.D.N.Y. Nov. 13, 2008).

Thus, providing all inferences in favor of the Plaintiff, it appears that the allegations in the Amended Complaint consist of (1) complaints regarding the past awarded contract to the Plaintiff's competitor, through what the Plaintiff claims was practically sole source procurement rather than competitive bidding (assuming that the federal regulations even apply to a supplier such as KME); and (2) a vague "lack of clarity" regarding whether federal highway regulations apply to the type of subcontract that the Plaintiff bid for and presumably will bid for again in the future. These allegations are insufficient to pass the sovereign immunity bar and the Court finds that the mandates of Ex Parte Young are applicable to the instant case.

In sum, because the Plaintiff has not alleged any continuing violation of federal law, its causes of action against the Defendant must all necessarily be dismissed. See, e.g., Boyland v.

<u>Wing</u>, 487 F. Supp. 2d 161, 180 (E.D.N.Y. 2007) (holding that absent a continuing violation of federal law by the state, claims for injunctive, compensatory or declaratory relief against state officials are barred by the Eleventh Amendment); <u>Rothenberg</u>, 234 F. Supp. 2d at 221–222 (dismissing the plaintiff's Section 1983 claims on the basis that the plaintiff sought only retrospective declaratory relief).

**D.  <u>As to Whether the Plaintiff Has Standing</u>**

As an alternative basis for dismissal, the Defendant contends that the Plaintiff does not have standing to seek compliance with or clarification of the federal statute and regulations under the FAHA.  The Court agrees.  Regardless of whether the Plaintiff is certain that competitive bidding procedures apply—so that a Section 1983 claim is appropriate—or whether it is uncertain whether competitive bidding procedures apply—so that a declaratory judgment is needed—the Plaintiff in this case simply does not have standing to assert either a violation of or uncertainty with regard to the federal regulations at issue.

The requirement of standing is rooted in Article III of the United States Constitution, which limits the jurisdiction of the federal courts to "cases and controversies."  U.S. Const., Art. III, § 2.  The Plaintiff bears the burden of establishing "that [it] has standing for each type of relief sought."  <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 129 S. Ct. 1142, 1149, 173 L. Ed. 2d 1 (2009).

Standing is made up of two components: constitutional and prudential.  <u>Kowalski v. Tesmer</u>, 543 U.S. 125, 128, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004) ("The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance.  This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'") (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343

(1975)). Constitutional requirements of standing are not flexible, as they necessitate a "case or controversy". On the other hand, prudential limits are judicially self-imposed restrictions on a court's exercise of jurisdiction.

In order to satisfy the standing requirements of Article III of the Constitution, a plaintiff must demonstrate that: (1) it has suffered an injury in fact that is concrete, particularized, and imminent; (2) that injury is fairly traceable to, or caused by, the challenged action of the defendant; and (3) it is likely, rather than conjectural, that the injury will be redressed by a favorable decision. See generally Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136–39 119 L. Ed. 2d 351 (1992); Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 320 (4th Cir. 2002)). As stated above, the Plaintiff bears the burden of establishing these prerequisites.

In addition to the "'immutable requirements of Article III,' the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." Bennett v. Spear, 520 U.S. 154, 117 S. Ct. 1154, 1161, 137 L. Ed. 2d 281 (1997) (citation omitted). These concepts are: (1) "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties," Valley Forge Christian College, 454 U.S. at 474, 102 S. Ct. at 760 (citation omitted); (2) "even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Article III, the federal courts will not adjudicate abstract questions of wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the representative branches," Id. at 474–75, 102 S. Ct. at 760 (citation omitted); and (3) "the plaintiff's complaint must fall

within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Id. (citation and internal quotations omitted).

As to the last consideration, the "zone of interests" inquiry is critical, and ultimately is dispositive in this case. "Although the 'zone of interests' consideration had its origin in the context of judicial review proceedings under the Administrative Procedures Act ('APA'), . . . it is now clear that it applies 'in suits not involving review of federal administrative action,' and it is one 'among other prudential standing requirements of general application.'" Trump Hotels & Casino Restorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478 (3d Cir. 1998) (quoting Bennett v. Spear, 520 U.S. at 154, 163, 117 S. Ct. 1154, 1161, 137 L. Ed. 2d 281)); see also Club Italia Soccer & Sports Roganization, Inc. v. Charter Tp. of X, 470 F.3d 286, 292 (6th Cir. 2006) ("the [Supreme] Court has declined to hold that the APA represents the only framework under which to apply the zone of interest test. In fact, the Court has recently noted that the test may be appropriately applied outside of this context.").

Here, whether the competitive bidding regulations unquestionably apply to the Plaintiff but have not been adhered to, or whether it is unclear whether the competitive bidding regulations apply at all, the Court finds that the allegations in the Amended Complaint fall outside the zone of interests protected by the FAHA and implementing regulations, even if they are sufficient for purposes of Article III. See Taubman Realty Group Ltd. P'shp v. Mineta, 320 F.3d 475, 481 (4th Cir. 2003) (holding that the purpose of the FAHA is "to improve the interstate highway system in order to 'meet the needs of local and interstate commerce, for the national and civil defense'") (quoting 23 U.S.C. § 101(b)); Stewart Park and Reserve Coalition, Inc. (SPARC) v. Slater, 352 F.3d 545, 561 (2d Cir. 2003) (same); Glasgow, Inc. v. Fed. Highway Admin., 843 F.2d 130, 135 (3d Cir. 1988) (noting that "Congress enacted the Act to advance the

public interest and not to benefit individual contractors."); <u>Sadler v. Mineta</u>, No. 05 Civ. 1189, 2006 WL 2772699, at *6 (D. Conn. Sept. 26, 2006) ("Among other reasons, because the purpose of the Highway Act is to improve the interstate highway system in order "to meet the needs of local and interstate commerce, for the national and civil defense," <u>see</u> 23 U.S.C. § 101(b), it is not at all clear to the Court that Plaintiffs fall within the zone of interests protected by the Highway Act."); <u>see also Doron Precision Sys., Inc. v. FAAC, Inc.</u>, 423 F. Supp. 2d 173, 183 n.11 (S.D.N.Y. 2006) ("'competitive' bidding has nothing to do with promoting quality or choice. It is simply an anticorruption device."). <u>Cf. City of Cleveland v. Ohio</u>, 508 F.3d 827, 836 (6th Cir. 2007) (finding that the city had an interest in receiving federal funds under the FAHA, which was within the zone of interests regulated by the statute in question); <u>Glasgow</u>, 843 F.2d at 136 (finding that because as a practical matter the bidder had a substantial interest in the action, that the case raised an important public issue, and because there was undoubtedly a case or controversy, the court would assume without deciding that the plaintiff had standing). As stated by the Third Circuit some years ago in addressing the competitive bidding process for primary contractors, "Congress' concern in 23 U.S.C. § 112 was to safeguard the federal treasury by providing for federal oversight of state action in awarding highway construction contracts." <u>Glasgow</u>, 843 F.2d at 130. "Further, Congress enacted the Act to advance the public interest and not to benefit individual contractors. 23 U.S.C. § 101." <u>Id.</u>

As set forth above in the context of sovereign immunity, the Plaintiff has alleged that it lost a contract in the past, possibly because of the claimed lack of compliance with federal law and related "thwarting" of the Project award by the Town, as an agent of the Defendant. In fact, the Plaintiff explicitly states in its opposition that the "[i]njury in this case involved the denial of the award of the Brookhaven contract even though KME was the low bidder pursuant to federal

law." (Pl. Opp. at 11.) However, as the Supreme Court explained in <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983), the fact of past injury, "while presumably affording [the plaintiff] standing to claim damages . . ., does nothing to establish a real and immediate threat that he would again" suffer similar injury in the future. <u>Id.</u> at 105, 103 S. Ct. at 1667. "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." <u>Mayfield v. U.S.</u>, 599 F.3d 964, 970 (9th Cir. 2010) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

As for the notion that a disappointed bidder should have standing to challenge a regulation that might affect future projects they will attempt to bid on, any argument in this regard would likely be fruitless, and the Plaintiff does not even attempt to make it. Generally speaking, "the law concerning whether a disappointed bidder is conferred standing in a federal court has been the source of a fair amount of confusion." <u>Club Italia</u>, 470 F.3d at 293. In 1940, the Supreme Court expressly held that a disappointed bidder for a federal government contract did not have standing to sue the federal government for violations of bidding rules contained in the Public Contracts Act. <u>Perkins v. Lukens Steel Co.</u>, 310 U.S. 113, 125–26, 132, 60 S. Ct. 869, 84 L. Ed. 1108 (1940). However, the subsequent passage of the Administrative Procedure Act ("APA") led several courts to reason that the statute indicated a congressional intent to create private rights, at least in contracting with the *federal* government. <u>See, e.g.</u>, <u>B.K. Instrument, Inc. v. United States</u>, 715 F.2d 713, 722–23 (2d Cir. 1983); <u>Airco, Inc. v. Energy Research & Dev. Admin.</u>, 528 F.2d 1294, 1296 (7th Cir. 1975).

Nevertheless, these cases all arose long before the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(d), 110 Stat. 3870, 3875 (codified at 28 U.S.C. § 1491(b)),

which allowed district court jurisdiction over bid protests to expire in 2001, so that the United States Court of Federal Claims is now the exclusive judicial forum for virtually all preaward and postaward bid protests. See Rothe Dev., Inc. v. U.S. Dep't of Defense, 666 F.3d 336, 338 (5th Cir. 2011). In addition, other courts have recognized the passage of the APA as only an exception to the general rule of Lukens Steel, and not as a legislative rejection of it. See, e.g., Club Italia, 470 F.3d at 294 ("Therefore, unless a party brings a suit under the APA or similar legislation which evinces a congressional intent to create a grounds for standing for a disappointed bidder, this Court will not confer standing upon disappointed bidders."). More importantly, these cases are instructive only in the context of a bid dispute between a government contractor and the federal government. They do not reveal any binding precedent with regard to the situation at hand—a dispute between a subcontractor and a state or local government. The Plaintiff in the present case does not rely on the APA or any similar legislation that would provide it with standing. Thus, even if the Plaintiff were to make an argument related to its status as a disappointed bidder, this Court agrees that "a disappointed bidder does not have standing to challenge the award of a state contract as failing to comply with federal procurement policy set forth in federal regulations." AlohaCare v. Hawaii, Dept. of Human Servs., 567 F. Supp. 2d 1238, 1264 (D. Hawaii 2008) (citing Sowell's Meats and Services, Inc. v. McSwain, 788 F.2d 226, 228 n. 2 (4th Cir. 1986)).

Finally, it is worth noting that the only other court to have faced a supplier's challenge to this precise regulation—23 C.F.R. 635.411—found that the entity analogous to KME here was not a "bidder" or "prospective bidder", and thus should not have standing to challenge the law. As stated by the New Jersey State Appellate Division, "in order to acquire the status of a 'bidder,' an entity must submit a proposal to enter into a mutually binding agreement with the

governmental body. An entity that merely supplies equipment to a general contractor cannot be considered a 'bidder.'" JEN Elec., Inc. v. Cnty of Essex, 401 N.J. Super. 203 (2008).

In this case, it is also arguable that KME was not the low bidder, as it "was not a direct bidder or prospective bidder on the contract. Plaintiff is merely a supplier of products that it would like to have used in the performance of the contract." Id. (interpreting whether a supplier has standing to challenge government violations of 23 U.S.C.A. § 112 and 23 C.F.R. § 635.411). See also Jen Elec., Inc. v Cnty. of Essex, 197 N.J. 627, 964 A.2d 790 (2009) ("the Appellate Division accurately defined plaintiff as a vendor that proposed to provide equipment to either a bidder or a 'prospective bidder.'"). While the JEN Elec. case was subsequently overturned by the highest New Jersey state court, it was reversed only on issues of specific New Jersey statutory law. Accordingly, this case may provide some basis from which to conclude that as to this specific regulation, a disappointed equipment supplier would not have standing to challenge this law.

Therefore, in light of the above "zone of interests" analysis, the Court finds that the Plaintiff does not have standing to pursue its federal claims in this matter. On this additional ground, the Defendant's motion is granted and the action is appropriately dismissed. See, e.g., Stewart Park, 352 F.3d at 561 ("Because Plaintiffs—environmental, recreational, and sporting groups—cannot show they are within the zone of interests protected by [23 U.S.C.] § 111, they lack standing to make a claim under § 111.").

**E.  Failure to State a Claim**

Even if this Court were to put aside any issues of sovereign immunity or standing, the Defendant also contends that the Amended Complaint must necessarily be dismissed for failure to state a claim upon which relief may be granted.

The Plaintiff brings three separate causes of action in its Amended Complaint: (1) 42 U.S.C. § 1983; (2) "declaratory judgment"; and (3) "injunction".  Through its Section 1983 cause of action, as well as its causes of action for declaratory and injunctive relief, KME contends that it has the right to have the Defendant comply with federal highway regulations; it has a "liberty interest" in such compliance; and it has the "right" to expect such compliance.  (1st Am. Compl. ¶¶ 85–87.)

The question then is whether the Plaintiff can pursue a Section 1983 cause of action to assert violations of the FAHA and its regulations, and whether it may seek to cure past violations and/or future violations of those same regulations through a declaratory judgment action or through its pursuit of injunctive relief.

**1.  42 U.S.C. § 1983**

It is well-settled that "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).  A federal statute creates a cognizable claim against a state actor under Section 1983 when it meets the following three requirements:

> First, Congress must have intended that the provision in question benefit the plaintiff.  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

Blessing v. Freestone, 520 U.S. 329, 340–41, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997).  The Supreme Court stressed, in Gonzaga Univ. v. Doe, 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002), that "it is only violations of rights, not laws, which give rise to § 1983 actions."  Id. at 283, 122 S. Ct. 2268 (emphasis in original).  The Court rejected the notion that any decisions

rendered since <u>Blessing</u> "permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." <u>Id.</u> Therefore, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit." <u>Id.</u> at 286, 122 S. Ct. 2268 (internal quotations omitted). Moreover, "[e]ven after this showing, 'there is only a rebuttable presumption that the right is enforceable under § 1983.' The defendant may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right." <u>Rancho Palos Verdes v. Abrams</u>, 544 U.S. 113, 120, 125 S. Ct. 1453, 1458, 161 L. Ed. 2d 316 (2005) (quoting <u>Blessing v. Freestone</u>, 520 U.S. 329, 341, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997) and <u>Smith v. Robinson</u>, 468 U.S. 992, 1012, 104 S. Ct. 3457, 3469, 82 L. Ed. 2d 746 (1984)).

"In this action, any federally protected 'right' that the plaintiff possesses, if such right exists, must flow from the [FAHA] because this is the only statute which the plaintiff alleges has been violated by the [Defendant]." <u>Balf Co., Inc. v. Gaitor</u>, 534 F. Supp. 600 (D. Conn. 1982). In the instant case, the text and structure of the FAHA demonstrate that it does not give rise to an enforceable, individual right. There is no dispute that the FAHA does not provide for an express private right of action, and many courts have held that no private right of action is implied under its various provisions. <u>See, e.g.</u>, <u>Jersey Heights Neighborhood Ass'n v. Glendening</u>, 174 F.3d 180 (4th Cir. 1999) ("Since neither FAHA nor NEPA itself provides a private right of action . . ."); <u>Daye v. Pennsylvania</u>, 483 F.2d 294 (3d Cir. 1973) (affirming district court's conclusion that FAHA creates no private right of action for damages); <u>Highway J Citizens Group, U.A. v. U.S. Dept. of Transp.</u>, 656 F. Supp. 2d 868, 894 (E.D. Wis. 2009) ("FAHA does not create a private right of action to redress purported violations"); <u>Ware v. U.S. Federal Highway Admin.</u>, No. 04 Civ. 2295, 2005 WL 2416667, at *4 (S.D. Tex. Sept. 30, 2005) ("Numerous courts, including the

Fifth Circuit, have considered whether these provisions, including amendments to the FAHA by the Intermodal Surface Transportation Efficiency Act (ISTEA), imply private rights of action. All of these courts have answered this question in the negative."); <u>Am. Trucking Assocs., Inc. v. Delaware Rivert Joint Toll Bridge Comm'n</u>, No. 02 Civ. 8841, 2005 WL 300070, at *5 (E.D. Pa. Feb. 8, 2005) ("Indeed, nowhere in the Federal-Aid Highway Act of 1987 (FAHA) is there an express grant of a private right of action."); <u>Municipality of Anchorage v. Alaska</u>, 393 F. Supp. 2d 958, 961 (D. Alaska 2005) (finding no private right of faction under 23 U.S.C. § 134 and its implementing regulations); <u>Buckingham Tp. V. Wykle</u>, 157 F. Supp. 2d 457, 465 (E.D. Pa. 2001) ("The provision of the FAHA relied upon by plaintiff, 23 U.S.C. § 109(a)(2), particularly when read in the context of the surrounding language, constitutes nothing more than a general statement of policy which does not imply a private right of action); <u>But see Trump Hotels</u>, 963 F. Supp. 395 ("This conclusion is fully consonant with the purpose of the [FAHA]. The [FAHA] is essentially a grant of federal funds to support the construction of state roads and highways. The only public interest which could justify a citizen suit under the Act, is in ensuring that federal funds are not misspent.").

The Plaintiff states in its opposition that "[t]he Federal Aid Highway Act does not authorize a private right of action and none is sought". It further states that it is not asserting a private right of action under the Act, but instead alleging that the "lack of a protest mechanism encourages uncertainty necessitating declaratory judgment and prospective injunctive relief". Based on this argument by the Plaintiff, it is unclear what cause of action it is attempting to assert. It appears to intend to pursue a Section 1983 cause of action, but does not articulate a basis for such in the Amended Complaint beyond the FHA, other than a vague liberty interest.

In that regard, the Plaintiff has not stated a valid Section 1983 claim by pointing to alleged constitutional violations such as the deprivation of a liberty interest in the "proper application of the laws". "[W]here liberty interests are asserted as a basis for liability pursuant to § 1983, courts have consistently undertaken a threshold inquiry at the onset of litigation: 'First, courts must address the threshold issue in any action brought under § 1983: whether the plaintiff has alleged the deprivation of an actual constitutional right at all.'" McCurdy v. Dodd, 352 F.3d 820, 825–26 (3d Cir. 2003) (quoting Butera v. District of Columbia, 235 F.3d 637, 646 (D.C. Cir. 2001). The Court must identify the alleged due process right before it can proceed. See id. ("The contours of legal concepts such as liberty interests and fundamental rights are amorphous and indistinct"). There are no allegations in the Amended Complaint for this Court to find that the Plaintiff has any fundamental rights as a subcontractor or equipment supplier that would form the basis for a constitutional liberty deprivation. Cf. Idema v. Wager, 120 F. Supp. 2d 361, (S.D.N.Y. 2000) ("an alleged defamation was held not to injure a property or liberty interest protected by the U.S. Constitution, because reputation is not a constitutional right, liberty or interest."). Regardless, the Plaintiff has expressly stated that it "has not raised a liberty interest as part of its Section 1983 claim". (Pl. Motion to Strike ¶ 15.)

Finally, the Plaintiff relies on Balf Co., Inc. v. Gaitor, 534 F. Supp. 600 (D. Conn. 1982), for the proposition that "a private plaintiff in a § 1983 action need not establish that it has an implied right to sue under a separate federal statute, but rather must demonstrate that it has suffered an injury by the administration of a joint federal-state cooperative program and was an intended beneficiary of that program." Id. at 601. In the Balf case, the Court found that the Plaintiff could pursue a Section 1983 cause of action against state and municipal officials because it had possibly been deprived of a "right" secured by the laws of the United States,

namely, "the right to require a State to comply with FAHA regulations before limiting interstate access to traffic routes". Id. at 601. However, to the extent that the violation of a federal "right" can be brought through the vehicle of a Section 1983 cause of action, even where there is no private right of action in the statute that the "right" flows from, the Court finds this case to be distinguishable. There, the court found that the plaintiff was an intended beneficiary of the program, because "[t]he FAHA, even though arguably not adopted for the 'especial benefit' of the plaintiff, clearly was intended, through the expenditure of federal monies to improve road conditions on interstate routes, to benefit those persons who travel extensively in interstate commerce." Id. at 605. Consequently, the Balf court declared that "[t]he plaintiff's ability to transport goods in interstate commerce has been significantly affected by the defendants' decision to eliminate 'thru truck traffic' on [specified] Streets." Id. Here, the FAHA regulations concern competitive bidding and sole source procurement, not interstate commerce. For similar reasons as those set forth in the "zone of interests" test related to standing, the Court is not persuaded by the distinguishable reasoning in Balf that the Plaintiff here is an intended beneficiary of this category of regulations, or even the federal-state cooperative program as a whole. See Glasgow, Inc. v. Fed. Highway Admin., 843 F.2d 130, 135 (3d Cir. 1988) (noting that "Congress enacted the Act to advance the public interest and not to benefit individual contractors.").

Therefore, the Court finds that KME has failed to state a claim pursuant to 42 U.S.C. § 1983.

## 2. Declaratory Judgment and Injunctive Relief

As to the only remaining causes of action in the Amended Complaint—namely, the counts for a "declaratory judgment" and an "injunction"—the Plaintiff cannot survive a motion to dismiss by relying on these claims as independent causes of action.

First, with regard to the claim for declaratory relief, presumably under the Declaratory Judgment Act ("DJA"), "[t]he DJA provides a remedy, not a cause of action." Id. "[A] request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights." In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726, 731 (2d Cir. 1993). This is because the statute that authorizes the declaratory judgment remedy expressly incorporates the Article III case or controversy limitation. Id.; see 28 U.S.C. § 2201 (1988) ("In a case of actual controversy within its jurisdiction . . . ."). "Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." In re Joint, 14 F.3d at 731; see In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 247 F.R.D. 420, 422–23 (S.D.N.Y. 2007) (opining that "declaratory relief is not a claim but only a remedy that Congress has created . . ." and that the claim, or the legal theory under which relief is sought "must be based on other laws that the defendant allegedly violated in order to receive [declaratory] relief"). As set forth above, the Plaintiff has no independent substantive claim of a right to this relief. Therefore, the cause of action for declaratory relief is appropriately dismissed for failure to state a claim. See Porat v. Lincoln Towers Cmty. Ass'n, 2005 WL 646093, at *7 (S.D.N.Y. Mar. 21, 2005) ("Here . . . all of Plaintiff's federal claims are dismissed . . . Because there is no other basis for federal jurisdiction, the declaratory judgment claim is dismissed.").

Moreover, the "Plaintiff's requests for declaratory relief are not proper subjects for a declaratory judgment action, and are therefore dismissed for failure to state a claim." Simson v. State of Connecticut, No. 06 Civ. 301, 2006 WL 3422194, at *8 (D. Conn. Nov. 28, 2006). The DJA provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act is intended to "minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued," and provides "a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so." 10B Charles A Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2751 (3d ed. 2006). Put another way, the "real value of the judicial [declaratory] pronouncement . . . is the settling of some dispute which affects the behavior of the defendant towards the plaintiff." Hewitt v. Helms, 482 U.S. 755, 761, 107 S. Ct. 2672, 96 L. Ed. 2d 654 (1987). The main barrier in a declaratory judgment action is that it cannot be used "solely to adjudicate [a defendant's] past conduct." Crown Cork & Seal Co. v. Borden, Inc., 779 F. Supp. 33, 35 (E.D. Pa. 1991).

However, for reasons similar to those underlying the Court's determinations with regard to sovereign immunity and standing, the Court also finds that a close examination of the Plaintiff's requests indicate that it is asking the Court "to make a determination regarding, or to adjudicate, past conduct." Simson, 2006 WL 3422194, at *9. There is no current dispute

between the State and the Plaintiff that must be settled. Because the Plaintiff's claims do not present a proper subject for declaratory relief, they are dismissed on the ground that they fail to state a claim for which relief can be granted.

Second, with regard to the cause of action for a preliminary and/or permanent injunction, this must also be dismissed for failure to state a claim. "Similarly [to declaratory relief], a request for injunctive relief is not a separate cause of action." Springfield Hosp., 2011 WL 3421528, at *2 (citing Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action.") (citations omitted)); see also Warren v.. Rodriguez–Hernandez, No. 10 Civ. 25, 2010 WL 3668063, at *3 (N.D. W. Va. Sept. 15, 2010) ("A request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in the . . . substantive counts.") (citations and internal quotation marks omitted); Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action."). As with the request for a declaratory judgment, the Plaintiff's prayer for relief asks the Court to restrain the Defendant from taking official action in violation of federal law as declared as a result of the suit. However, in light of the dismissal of the Section 1983 cause of action, no substantive federal claim remains upon which the Plaintiff can base its requests for declaratory and injunctive relief. See Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1127 (11th Cir. 2005) ("An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.") (citation and internal quotation marks omitted).

Therefore, the Plaintiff's causes of action for declaratory and injunctive relief are also dismissed for failure to state a claim.

### F.  <u>Motion to Strike</u>

Finally, the Court will address the Plaintiff's motion to strike, which was filed on February 21, 2012.  In particular, the Plaintiff contends that in the Defendant's reply memorandum of law in further support of its motion to dismiss, she references documents that are outside the pleadings to be considered as part of the motion.  In particular, the documents at issue are: (1) KM's own e-mails to the potential prime contractors for the Project, including Hinck (Docket Entry No. # 39-11); (2) specifications in the Town's invitations for bids to become the Town's prime contractor on the project, which ultimately turned out to be Hinck (Docket Entry No. # 39-13); and (3) a letter to KM's attorney in this action from an attorney with the Federal Highway Administration stating that "there is no requirement in Title 23 [CFR] mandating a prime contractor [to] solicit bids or seek a low bid with respect to selecting subcontractors".  Therefore, KME requests the Court to exclude these extraneous documents and strike the corresponding portions of the Defendant's reply.

However, the Court finds that even if it were to exclude the documentary evidence submitted as part of the Defendant's reply papers and any argument that references such documents, it does not alter the outcome of the disposition of the motion.  The Court's determinations with regard to sovereign immunity, standing, and failure to state a claim were made irrespective of any documentation of the Plaintiff's bids or price quotations; the Town's specifications; or a letter from the Federal Highway Administration to the Plaintiff concerning the applicable regulations.  These documents were simply not considered in reaching the decisions at issue.  Therefore, the Court does not deem it necessary to address whether the Court

should exclude the documents referenced and attached to the Defendant's reply papers, because the Court's disregard of this material had no effect on the outcome of the pending motion.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendant's motion to dismiss the Complaint in its entirety is granted with prejudice; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**


Dated: Central Islip, New York
September 25, 2012

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge
